**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

No. _19mj 3356 - Reid_

**UNITED STATES OF AMERICA**

**vs.**

**GUILLERMO BARRERA LARA and**
**PABLO AMEZCUA DORADOR,**

   **Defendants.**
_____/

**<u>CRIMINAL COVER SHEET</u>**

1.  Did this matter originate from a matter pending in the Central Region of the United States
    Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?    _Yes <u>X</u> No

2.  Did this matter originate from a matter pending in the Northern Region of the United States
    Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? _Yes <u>X</u> No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: _____
Daniel J. Marcet
Assistant United States Attorney
Fla. Bar No. 0114104
11200 NW 20th Street
Miami, Florida
Tel: (305) 715-7642
Daniel.Marcet@usdoj.gov

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| GUILLERMO BARRERA LARA and | ) | Case No.  19 mj 3350-Reid |
| PABLO AMEZCUA DORADOR, | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____June 2019 to August 22,2019,_____ in the county of _____Miami-Dade_____ in the

_____Southern_____ District of _____Florida_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 963 | Conspiracy to Import Heroin |
| 18 U.S.C. § 1956(h) | Conspiracy to engage in money laundering |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

_____Brian Witek, DEA Special Agent_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____8/23/19_____

_____
*Judge's signature*

City and state: _____Miami, Florida_____        _____Lisette Reid, U.S. Magistrate Judge_____
*Printed name and title*

## AFFIDAVIT

I, Brian Witek, being duly sworn, depose and state as follows:

1. I am a Special Agent with the United States Department of Justice, Drug Enforcement Administration (DEA), and have been so employed since 2005.  I am currently assigned to DEA Miami Field Division, High Intensity Drug Trafficking Area (HIDTA) Task Force, Group 41.  I am a criminal investigator for the United States within the meaning of Title 21, United States Code, Section 878, and therefore I am empowered to conduct investigations of, and make arrests for, the offenses enumerated in Title 21 and Title 18.

2. The information contained in this Affidavit is submitted for the sole purpose of establishing probable cause that, from in our around June of 2019 until August 22, 2019, Defendants Guillermo BARRERA LARA and Pablo AMEZCUA DORADOR conspired to import five kilograms or more of heroin to the United States, in violation of Title 21, United States Code, Section 963, and conspired to engage in money laundering, in violation of Title 18, United States Code, Section 1956(h).

3. The information in this Affidavit is based on my personal knowledge and information provided to me by others, including other law enforcement personnel.  The information set forth herein is provided solely for the purpose of establishing probable cause in support of the criminal complaint and does not include all of the facts learned during the course of the investigation.

4. Beginning in June of 2019, a DEA confidential source (CS) began conducting meetings with Pablo AMEZCUA DORADOR, a Mexican National.  AMEZCUA portrayed himself as a money launder who invested in drug proceeds through real estate developments in Cancun,

1

Mexico.  These meetings took place in Panama in June 2019, followed by a second meeting in Guatemala in July 2019.

5.      Two more meetings were held in Miami during July and August 2019.  During these meetings, AMEZCUA introduced the CS to Guillermo BARRERA LARA.  The CS explained to AMEZCUA and BARERA that he had $17 million of drug proceeds in the United States, and AMEZCUA and BARRERA agreed that they would take out of the United States to launder for the CS.  AMEZCUA and BARRERA further agreed to use their private jets and a yacht to help the CS bring heroin into the United States.

6.      During the first meeting in Miami on or about July 24, 2019, AMEZCUA and BERRERA brought plans outlining a resort in Mexico that they would invest in using the CS's narcotics proceeds.  During this meeting, the CS also stated that he/she had heroin available outside of the U.S. but lacked the logistics to smuggle it into the U.S.  AMEZCUA and BARRERA discussed the opportunity and offered their private aircrafts and yacht to be utilized by the CS to smuggle heroin into the United States in exchange for a percentage of the profits.  During that same meeting, a plan was devised where the Defendants' private aircrafts and yacht would be moved to The Bahamas from Mexico and utilized by the CS to move 10 kilograms of heroin from Nassau to Miami, with five kilograms of heroin being smuggled aboard the Defendants' yacht and five kilograms of sham heroin aboard a private jet owned by the Defendants.

7.      The second meeting in Miami occurred on or about August 5, 2019.  At that meeting, the CS, AMEZCUA, and BARRERA further confirmed the details of their plan to smuggle heroin into the United States and to launder money out of the United States.

2

8.      On or about August 19, 2019, the CS flew to The Bahamas and met with AMEZCUA and BARRERA, who took the CS to the private jet and vessel and showed the CS where they wanted the heroin to be hidden on board each vehicle.  Thereafter, the CS took both AMEZCUA and BARRERA to a hotel and displayed ten kilograms of "sham," or fake, heroin, which was represented to AMEZCUA and BARRERA to be real heroin.  The sham heroin was displayed and placed into luggage for transport to the aircraft and vessel.  However, both AMEZCUA and BARRERA would not accompany the CS when the drugs were placed on their vehicles, as they did not want to handle the narcotics.  Later that same evening, the CS and law enforcement placed five kilograms of sham heroin each on the private jet and yacht as previously dictated by AMEZCUA and BARRERA.

9.      On or about August 20, 2019, the CS along with AMEZCUA and BARRERA sent the yacht containing five kilograms of purported heroin to Miami.  Later that same day, the CS and the five additional kilograms of sham heroin arrived in Miami on board the Defendants' private jet.  On or about August 21, 2019, the yacht containing five kilograms of sham heroin arrived to Bayside Marina in Miami.  According to the plan engaged in between the CS, AMEZCUA, and BARRERA, the CS was to retrieve the ten kilograms of sham heroin, sell it, and deliver to AMEZCUA and BARRERA their share of the proceeds later that same day.

10.     Later on August 21, AMEZCUA and BARRERA arrived in Miami aboard a commercial flight from The Bahamas.  After they arrived, the Defendants spoke with the CS, who asked whether the CS could use another private plane that they owned to take 30 kilograms of heroin to New York, to which they agreed.  The CS, AMEZCUA, and BARRERA agreed to meet the following day, August 22, so that the CS could pay AMEZCUA and BARRERA their share of the proceeds from the sale of the purported heroin they had brought to the United States.

3

11.     On or about August 22, 2019, AMEZCUA and BARRERA met with the CS at the Opa-Locka Executive Airport.  AMEZCUA and BARRERA were expecting to receive $300,000 each as their profit from the sale of the heroin they had imported, as well as an additional $17,000,000 in drug proceeds that they expected to take to Mexico on board another private jet to launder for the CS.   During this meeting, the CS provided BARRERA with a small bag that purported to contain $100,000, which was then placed aboard one of the private jets.  Thereafter, AMEZCUA, BARRERA, and the CS met with an undercover agent (UC) who purported to be an associate of the CS.  The UC provided a bag that contained $300,000 in sham United States currency.  The CS opened the bag to display the money and provide it to AMEZCUA and BARRERA.  AMEZCUA and BARRERA were then detained by law enforcement.

12.     AMEZCUA and BARRERA were advised of their *Miranda* rights and agreed to speak to law enforcement.  Both AMEZCUA and BARRERA confessed to their involvements in the money laundering and drug smuggling conspiracies discussed above.


[THIS SPACE INTENTIONALLY LEFT BLANK]

4

13.     Based on the foregoing, I respectfully submit that there is probable cause to believe that, from in our around June of 2019 until August 22, 2019, Defendants Guillermo BARRERA-LARA and Pablo AMEZCUA-DORADOR conspired to import five kilograms or more of heroin, in violation of Title 21, United States Code, Section 963, and conspired to engage in money laundering, in violation of Title 18, United States Code, Section 1956(h).


FURTHER YOUR AFFIANT SAYETH NAUGHT


_____
Brian Witek, Special Agent
Drug Enforcement Administration


Sworn to and subscribed before me this
_____23rd_____ day of August, 2019

_____
HONORABLE LISETTE REID
UNITED STATES MAGISTRATE JUDGE


5