**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-20562-CR-WILLIAMS**

**UNITED STATES OF AMERICA,**

vs.

**GUILLERMO BARRERA LARA,**

    **Defendant.**
_____/

**SENTENCING MEMORANDUM**

    The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this Sentencing Memorandum. The United States respectfully requests that the Court sentence Guillermo Barrera Lara ("Defendant") consistently with the sentencing of the codefendant, Pablo Amezcua Dorador ("Dorador"). Dorador received a sentence of 130 months, which was approximately 20% below the low end of the Sentencing Guidelines range. Barrera's guidelines range is 135-168 months, and 20% below the low end of the guidelines range is approximately 108 months.

    **A. Nature and Circumstances of the Offense and Relative Culpability**

    A substantial sentence is necessary to serve the purposes of 18 U.S.C. § 3553(a). First, looking to the nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1), the Defendant played a substantial role in a serious money laundering and narcotics trafficking conspiracy. From the moment that he met with the confidential informant, the Defendant enthusiastically participated in the conspiracy, which would have enabled a major narcotics trafficker to launder a huge sum of narcotics proceeds. This Defendant provided a plane in order to smuggle heroin into the United States and to bring a huge sum of cocaine proceeds out of the United States. This Defendant proposed the manner of laundering money through his real estate project, and even brought a

blueprint to his first meeting with the confidential informant to sell him on the plan. This Defendant would have been responsible for carrying out the laundering plan and ensuring that drug proceeds made their way back to the narcotics traffickers.

The Defendant nevertheless seeks a substantial sentencing variance based on perceived culpability differences between himself and Dorador. Dorador's offense level was two levels higher than Barrera's based on the undisputed fact that Dorador recruited this Defendant into the money laundering conspiracy. This two-level enhancement resulted in a three-year difference between the defendants' Guidelines ranges, and a further sentencing disparity is not warranted.

Indeed, in the scope of the charged money laundering scheme, it is difficult to imagine how any participant could be more culpable than this Defendant. To be sure, Dorador recruited this Defendant into the conspiracy and accepted a three-year increase in his Guidelines range for that action. However, under the plan formulated between Dorador, this Defendant, and the confidential informant, this Defendant essentially would have done every aspect of the money laundering: this Defendant supplied the plane to facilitate movement of bulk cash out of the United States and into Mexico, and this Defendant was in charge of the real estate project through which the funds would be laundered. These actions effectively encompassed the entire money laundering scheme, and Dorador had no control or involvement in these activities. Thus, it is not accurate to describe Dorador as substantially more culpable in the execution of this money laundering scheme.

The Defendant also argues that he should receive a substantial downward variance because Dorador was not held accountable for being in the business of money laundering. The only evidence that Dorador is in the business of money laundering came from his own uncorroborated statements during meetings with the confidential informant. Absent corroborating evidence, the United States did not seek application of an enhancement for Dorador's being in the business of money laundering. Similarly, the United States is not seeking to rely on this Defendant's

uncorroborated statements regarding his past criminal conduct,[1] or both defendants' uncorroborated assertions that they would be willing and able to launder $150 million as part of an ongoing series of transactions with the confidential informant.[2] To base a downward variance for this Defendant on similarly uncorroborated assertions by his codefendant would create an unwarranted sentencing disparity.

The Defendant also points to the fact that Dorador was to receive a substantially higher percentage commission as evidence that Dorador was more culpable in this crime. It is true that Dorador's percentage commission was higher than this Defendant's. However, in addition to his commission, this Defendant was going to receive tens of millions of dollars, interest-free, in order to fund a major real estate development in which this Defendant – not Dorador – had an interest. Thus, it cannot be said with certainty that Dorador would have profited more than this Defendant when all of the laundering was complete.

Finally, the Defendant seeks to minimize the severity of this offense by calling it a "series of hairbrained schemes and overblown ideas." Sadly, large scale narcotics money laundering is a real world problem, and has devastating impacts on the communities where it occurs. The fact that this particular conspiracy was part of a sting operation does not detract from the fact that this Defendant and his codefendant were prepared to take $17 million in cocaine proceeds, launder them through a major real estate development in Mexico, and return the bulk of the money to a large scale narcotics trafficker.

---

[1] DEA Report dated August 6, 2019.
[2] DEA Report dated July 25, 2019.

### B. Acceptance of Responsibility and Cooperation

The United States agrees with the Defendant that he promptly accepted responsibility for his crimes. From the moment of their arrests, both defendants immediately and thoroughly confessed to their crimes and expressed remorse for their actions. Additionally, based on the letters submitted in support of this Defendant, it appears that he has helped many people in his community a great deal.

However, certain assertions made by the Defendant regarding his cooperation are not accurate. The Defendant did not enter into a "substantial assistance" agreement in this case as he claims in his filings – the plea agreement contains no such language because both parties recognized that the Defendant had no appropriate cooperation to offer. While this Defendant did promptly debrief and offer to cooperate against his codefendant Dorador if necessary, Dorador similarly immediately offered to plead guilty and cooperate (and in fact pled guilty shortly before this Defendant). Similarly, while this Defendant did state that Dorador intended to lie about his crimes, Dorador never did so and no information about this Defendant's cooperation was disclosed to Dorador.

Nevertheless, the United States wishes to reiterate that in all interactions with law enforcement this Defendant accepted responsibility for his crimes and expressed remorse for his actions.

### C. Deterrence and Respect for the Law

Third, looking to the need to promote general deterrence and respect for the law, a substantial sentence is necessary. As the Eleventh Circuit has observed, general deterrence is particularly important in the economic crimes context. *See United States v. Martin*, 455 F.3d 1227, 1240 ("Because economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general

deterrence."). If this money laundering scheme had gone through, the Defendant would have received a substantial commission and, moreover, would have received a huge influx of funding to fuel a major real estate development in which he had an interest. In order to obtain these financial benefits, the Defendant went to great lengths – using his airplane to smuggle purported heroin into the United States, agreeing to launder a huge sum of money for a known cocaine trafficker, and bringing real estate blueprints to meet with a known drug trafficker in order to explain how the scheme would function. Deterring this sort of premeditated and highly profitable conduct is an important aspect of fashioning a sentence in this case.

**Conclusion**

For the reasons stated above, the United States respectfully requests that the Court sentence the Defendant to a sentence commensurate with the sentence of his codefendant.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: *s/Daniel J. Marcet*
Daniel J. Marcet
Assistant United States Attorney
Florida Bar No. 0114104
11200 NW 20th Street
Miami, Florida  33172
TEL (786) 360-9778
Daniel.Marcet@USDOJ.gov